IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| UNITED STATES OF AMERICA, | Crim. No. 05-60015-HO |
| Plaintiff, | ORDER |
| v. | |
| BRANDON ALLEN LYONS, | |
| Defendant. | |

The indictment charges that defendant Brandon Lyons, having been previously convicted of five violent felonies, possessed one or more certain firearms, in violation of Sections 922(g) and 924(c)(1) of Title 18 of the United States Code. Lyons filed a motion to suppress all evidence, including his statements. Lyons contends that law enforcement officials obtained the evidence by custodial interrogation conducted prior to issuing warnings required by Miranda v. Arizona, 384 U.S. 436 (1966), and subsequent to Lyons's request for counsel. For the reasons discussed below, the court finds by a preponderance of the evidence that Lyons did not invoke rights to counsel and to

remain silent, and that Lyons voluntarily consented to the search of a vehicle from which evidence was seized. Lyons's motion to suppress evidence is therefore denied.

## Factual Background

I. Undisputed Facts

On October 31, 2004, Lincoln County Sheriff's Deputies suspected Lyons and Shiloh McConnell of burglary. That afternoon, Deputy Abigail Dorsey had telephone contact with Lyons's mother, Wanda Sue Trusty. Trusty told Dorsey that Lyons was coming up the driveway of her residence in a red Ford Mustang. Lyons received the telephone from his mother and spoke with Dorsey. Dorsey radioed Lyons's whereabouts to Deputy Brady Endicott, and continued her conversation with Lyons.[1]

Endicott arrived at Trusty's residence just before 3:34PM. Deputy Kenneth Real provided backup.[2] According to dispatcher notes, Dorsey ended her phone connection with Lyons at 3:47:28PM, and Endicott reported defendant in custody with possession of methamphetamine and stolen property at 3:49:27. Def's ex. 101.

Deputy Bruce McGuire arrived at Trusty's residence at approximately 4:04PM. McGuire administered Miranda warnings and sought Lyons's consent to search the red Mustang. Lyons, Endicott and McGuire signed a consent to search form. "4:14PM"

---

[1] Brady Endicott no longer works in law enforcement.

[2] Kenneth Real is now a city police officer.

2 - ORDER

is written on the form. Gov't ex. 9. Deputies searched the vehicle and discovered a 22-caliber pistol, ammunition, jewelry, syringes and other items. The pistol matched the description of a gun reported stolen in the burglary under investigation. Lyons attributed the items in the vehicle to McConnell.

Lyons directed Endicott, McGuire and Sergeant Robert Jozwiak to the location of a stolen S.K.S. rifle. Lyons implicated McConnell and Corrina Peters in the burglary under investigation. When told that Peters implicated him in the burglary, Lyons conceded his involvement.

On August 2, 1999, Lyons and Endicott were involved in an altercation stemming from Endicott's attempt to arrest Lyons on suspicion of burglary and other crimes. Lyons and Endicott both sustained injuries and were treated at a hospital. Lyons was convicted of escape related to the events of his arrest. Lyons received consecutive sentences totaling five years on convictions for burglary, forgery and escape. Def's exs. 104-106.

II.  Prosecution Witnesses

   A.  Deputy Abigail Dorsey

Lyons spoke with Dorsey on the telephone from Trusty's residence on October 31, 2004. Dorsey asked if Lyons had seen McConnell and Peters. Lyons answered that he had not seen Shiloh for a day. Lyons denied knowledge of the burglary under investigation. Lyons admitted to Dorsey that he used

3 - ORDER

methamphetamine. Dorsey asked if Lyons would speak with Endicott and McGuire. Lyons responded that he would. Dorsey told Lyons not to give Endicott any trouble. Lyons responded, "I won't."

Dorsey next heard Endicott's voice and a sound consistent with Lyons setting down the telephone. Dorsey could no longer hear what was said, and disconnected the call after hearing Endicott radio "code 4, one in custody." She did not hear Lyons make a request for an attorney. She did not hear Lyons say, "I should talk to an attorney."

B. Kenneth Real

Former Lincoln County Sheriff Deputy Kenneth Real provided backup for Endicott and had no contact with Lyons. Real was not aware of prior contacts between Endicott and Lyons. Real witnessed Endicott handcuff and pat-down Lyons. Real was not in position to hear conversations, but nevertheless heard a comment by Endicott to the effect of, "last time that cost you five years." Real spoke with Lyons's mother and stepfather. Neither mentioned that Lyons had made a request for counsel. Lyons appeared to cooperate in his arrest. Real left the scene when Deputy McGuire arrived.

On cross examination, Real disavowed statements attributed to him in an investigator's report. The statements were critical of Endicott. On redirect examination, Real testified as follows. Real disliked working with Endicott. Endicott had previously

reported Real to the district attorney for improper work conduct. The investigator's interview consisted of three questions asked during a short cellular telephone conversation over a bad connection. The investigator did not tell Real that the conversation would be reported or recorded. The investigator did not give Real an opportunity to verify the accuracy of the report.

    C.  Bruce McGuire

Lincoln County Sheriff Deputy Bruce McGuire responded to Lyons's mother's residence at Endicott's request. Upon arrival, Endicott advised that Lyons was in custody, was very cooperative and Endicott believed that Lyons was willing to cooperate in the investigation. McGuire asked Lyons if he was willing to talk to him and Lyons stated yes. McGuire advised Lyons of his <u>Miranda</u> rights. Lyons indicated he understood those rights. McGuire asked Lyons if he would consent to a search of the vehicle. Lyons stated that he would. Lyons, Endicott and McGuire signed the consent form produced by Endicott. Lyons was placed in Endicott's patrol car, and the car was pulled up in front of the red Mustang. The deputies searched the vehicle and located the pistol and other items discussed above.

On cross examination, McGuire testified that he did not have Lyons sign an advice-of-rights card, and he asked Lyons for consent to search the vehicle within a few minutes after

5 - ORDER

providing him with advice of <u>Miranda</u> rights.

On redirect examination, McGuire testified that Lyons was placed in Endicott's patrol car with the window open, within earshot of the deputies as they conducted the search of the red Mustang. He stated that Lyons did not attempt to stop the search, and did not contradict Endicott's statement to McGuire that Lyons appeared willing to cooperate.

    D.  Robert Jozwiak

Lincoln County Sheriff Sergeant Robert Jozwiak has known Lyons for approximately ten years. Lyons has never refused to talk to him. Lyons did not say he wanted a lawyer during the search for the S.K.S. rifle. Jozwiak is aware of the August 1999 altercation between Endicott and Lyons, and of the Sheriff's findings that Endicott violated department policy regarding truthfulness. According to Jozwiak, Endicott lost some integrity prior to October 31, 2004.

    E.  Brady Endicott

Former Lincoln County Sheriff's Deputy Brady Endicott testified as follows. Endicott had prior contact with Lyons on August 2, 1999. The two fought, and both were seen in the hospital for injuries sustained in the fight.

Endicott arrested Lyons on October 31, 2004, based on McGuire's report of probable cause to believe Lyons was involved in a burglary. Lyons was cooperative during the arrest. Lyons's

mother and stepfather witnessed Endicott handcuff Lyons. During a pat-down search, Endicott found a container on Lyons. Lyons told Endicott that the container held methamphetamine. Endicott did not advise Lyons of Miranda rights. Endicott does not recall making the statement, "look what happened last time, you got five years."

Endicott remained with Lyons for approximately 20 minutes before Deputy McGuire arrived. Lyons did not ask for a lawyer and did not say that he did not want to talk to Endicott or McGuire. Lyons told McGuire he was willing to talk to McGuire. Endicott heard McGuire advise Lyons of his Miranda rights. Endicott did not recall whether he read the consent to search form to Lyons.

On cross examination, Endicott stated he had no recollection of Lyons telling him during their conversation on August 22, 1999, that Lyons was represented by counsel, and that Endicott should speak with his attorney. Endicott denied that Lyons told him he wanted a lawyer on October 31, 2004. When confronted with documentary evidence that he was placed on a "last chance agreement" as discipline in part for violating department policy regarding trustworthiness, Endicott testified that he does not actually agree that he violated the policy, but that he previously so agreed on advice of his lawyer. Endicott testified that he abused prescription drugs in the past, and that he

7 - ORDER

resigned from the department after receiving a letter threatening termination. A May 18, 2005, letter from Sheriff Dotson to Endicott states that if Endicott is unable to produce written documentation from his doctor regarding his ability to return to work from medical or family leave, his employment will be terminated effective 5:00PM on May 25, 2005. Gov't ex. 51.

III. Defense Witnesses

    A.  Wanda Sue Trusty

Wanda Sue Trusty, Lyons's mother, testified as follows.

Endicott approached the porch as Lyons spoke with Dorsey on the telephone. Endicott asked Lyons about McConnell. Lyons said he wanted his attorney. Endicott responded, "it didn't do you any good last time; it got you five years."

On cross examination, Trusty testified as follows. Lyons appeared to cooperate with Dorsey over the telephone. Trusty did not see Endicott place Lyons in handcuffs. Trusty didn't know that Dorsey was still on the line when Trusty took the cordless telephone receiver from Lyons. Lyons asked for a lawyer after Trusty took the receiver from Lyons, and after Endicott began asking questions. Trusty believes that Lyons asked for a lawyer after Endicott placed him in handcuffs. Lyons's stepfather and Officer Real were not in position to hear Lyons's request for a lawyer. Trusty did not witness Lyons sign the consent form. Trusty was alternately in and out of the house while deputies

remained with Lyons on the driveway.  Trusty heard Lyons tell McGuire that McConnell was responsible for items discovered in the red Mustang.  Trusty doesn't know when she first told someone other than her husband that she had heard her son ask for an attorney.

    B.   Defendant Brandon Lyons

    Brandon Lyons testified as follows.  On August 22, 1999, Endicott interviewed Lyons in jail.  Lyons told Endicott that he should talk to Lyons's lawyer.  Endicott threatened that Lyons would receive a fifteen-year sentence.

    On October 31, 2004, Endicott approached Lyons in his mother's driveway as Lyons spoke with Dorsey over the telephone.  Endicott asked Lyons whether he knew anything about McConnell.  Lyons replied, "You know I'm not gonna say anything.  I want my attorney."  Endicott then said, "You know what happened last time; you got five years."  Endicott then placed Lyons in handcuffs and told Lyons that he didn't need an attorney.  Lyons answered Endicott's questions because he felt threatened by Endicott, and he was afraid he would receive a longer sentence if he did not.

    Endicott asked Lyons for consent to search his car.  Lyons responded that the car did not belong to him.  Deputy McGuire arrived and asked for consent to search the vehicle.  Lyons gave his consent to Deputy McGuire.

9 - ORDER

On cross examination, Lyons provided the following testimony.  Lyons conceded prior forgery convictions.  Lyons denied telling Endicott that he was in possession of methamphetamine at the time of arrest, and denied that Endicott's statement, "look what happened last time," was a response to such statement by Lyons.  Lyons said he did not tell McGuire that Endicott threatened him, or that he wanted an attorney, because Endicott had told him he didn't need an attorney.  Lyons stated that deputies brought him a consent form only after finding ammunition and syringes halfway through the search of the vehicle.  Lyons stated that Endicott told him he could "make it all go away."  Lyons led the deputies and Sergeant Jozwiak to the S.K.S. rifle because he felt threatened by Endicott.  Lyons made a single request for counsel to Endicott.  Lyons has a poor relationship with his stepfather.

## Findings

Lyons and his mother claim that Lyons invoked his right to counsel in Endicott's presence.  Endicott denies this claim.  There is cause to question the credibility of each of these witnesses.  The Sheriff found that Endicott violated department policy regarding trustworthiness.  Whether he did so intentionally or negligently, there is substantial evidence that Endicott contacted Lyons in jail on August 22, 1999, a time when Lyons was represented by counsel.  Endicott testified that he

does not remember saying to Lyons words to the effect of "look what happened last time, you got five years." Real's report and the testimony of Lyons and his mother, Wanda Sue Trusty, evince that Endicott made such a statement.

Trusty had difficulty recalling significant portions of the roughly 45-minute contact between Lyons and deputies that occurred in her driveway. She did not recall when she first told someone other than her husband that her son requested an attorney. Former Deputy Real testified that he spoke with Trusty and her husband, and that neither mentioned a request for counsel by Lyons. No witness other than Lyons corroborates her testimony.

Lyons has prior convictions for crimes of dishonesty and also made false statements to deputies during the burglary investigation. Lyons provided conflicting reasons for cooperating with deputies after requesting counsel. He stated that he cooperated because he felt threatened by Endicott with the possibility of a longer sentence, and because Endicott assured him he that did not need an attorney. Lyons argues in his memorandum that his stepfather heard his request for counsel. His stepfather did not testify at the suppression hearing. Lyons's mother testified that her husband was not in position to hear Lyons's request. Lyons's testified that he has a poor relationship with his stepfather. Although Lyons testified that

11 - ORDER

Endicott threatened him with longer sentences in 1999 because he told Endicott to talk to his attorney, Lyons pleaded guilty to burglary and charges related to his apprehension, and produced no evidence that he attempted to challenge any charge, conviction or sentence as the product of Endicott's alleged threat.

Considering all the evidence, the court finds by a preponderance of the evidence that Lyons did not invoke his rights to counsel and to remain silent, and that he voluntarily consented to the search of the red Ford Mustang. The statement "look what happened last time, you got five years," makes little sense as a response to a request for counsel, as Lyons contends. Lyons's previous sentences resulted from his convictions for burglary and other crimes, not from any 1999 statement by Lyons to Endicott that Endicott should talk to Lyons's attorney. Notably, Endicott's contact with Lyons in this case concerned a burglary investigation, the same crime for which Lyons was convicted five years prior to his 2004 arrest by Endicott.

Lyons was in custody when he gave oral consent to search the Mustang to McGuire, and when he signed the written consent form. As noted, Lyons's simultaneous claims that he felt threatened by Endicott and relied on Endicott's assurances are inconsistent. Other witnesses testified that Lyons appeared to cooperate with deputies during the investigation of the burglary. The consent form signed by Lyons informed him of his right to refuse consent

to a search. The form also provides, "No threats or promises have been made by any person to make me give this consent." Lyons's claim that the consent form was not produced until after the search commenced is inconsistent with the sequence of events documented in McGuire's report and adopted as McGuire's testimony. For the reasons discussed above, Lyons is not a credible witness.

## Conclusion

Based on the foregoing, defendant Brandon Lyons's motion to suppress evidence [#19] is denied.

IT IS SO ORDERED.

DATED this 6th day of October, 2006.

_____
United States District Judge